**Robin Q. MARTIN, Plaintiff–Appellant,**

v.

**COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, Defendant–Appellee.**

No. 02–5464.

United States Court of Appeals, Sixth Circuit.

April 9, 2003.

Before MOORE and COLE, Circuit Judges; and SARGUS, District Judge.*

SARGUS, District Judge.

Plaintiff–Appellant Robin Q. Martin appeals the denial of Social Security disability benefits. Martin filed an application with the Defendant–Appellee, Commissioner of Social Security for disability insurance benefits pursuant to 42 U.S.C. § 405(g), on July 1, 1998. On December 9, 1999, the Administrative Law Judge ("ALJ") denied Plaintiff's request for benefits. On November 16, 2001, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. On March 29, 2002, the district court affirmed the ALJ's denial of benefits. On June 6, 2002, Defendant filed a motion to remand, which Plaintiff opposes.

For the reasons that follow, the motion to remand is DENIED and the decision of the district court is REVERSED.

I.

Plaintiff Martin was born on June 11, 1956. She graduated from high school in 1974. Plaintiff took correspondence insurance courses from 1984 to 1986 and completed one semester of college at the University of Memphis in 1997. Plaintiff is a single mother of one child who is six years old. Plaintiff was employed most recently as an insurance sales representative and sales manager. Plaintiff last worked on July 12, 1995, the date identified as the onset of disability. Plaintiff seeks benefits for disability based on the following: bipolar disorder, panic disorder, depression, frequent severe headaches, irritable bowel syndrome and post-traumatic stress disorder. (Tr. at 74).

Since 1990, Plaintiff has been treated by psychiatrist Radwan F. Haykal, M.D., for psychiatric conditions including bipolar and post-traumatic stress disorders. According to Dr. Haykal, the diagnosis of bipolar disorder is attributed to Plaintiff's history of depressive episodes, characterized by social withdrawal and negative thoughts, together with manic or hypomanic behavior during which Plaintiff becomes aggressive and overbearing. (Tr. at 5–7; 9–10). Plaintiff takes a combination of anti-depressants and mood stabilizers to treat the bipolar disorder. The medications contribute to Plaintiff having problems with sleep. (Tr. at 23). Plaintiff's post-traumatic stress disorder derives from a history of sexual and physical abuse. (Tr. at 12–13).

Dr. Haykal hospitalized Plaintiff in July 1995 due to her increasing depression and anxiety. (Tr. at 15). Plaintiff was under extreme stress at work and her depression contributed to an inability to handle her employment duties. (Id.). Plaintiff's job required her to be attentive and alert: Plaintiff was unable to sustain her concentration. (Tr. at 26). Further, Plaintiff would often become extremely edgy and

* The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

irritable. Plaintiff was not able to handle stress in any form. (Tr. at 27).

According to Dr. Haykal, Plaintiff satisfied Listing 12.04, A and B, Affective Disorder.[1] With respect to Part A. Plaintiff

1. See 20 C.F.R. Part 404, subpart P, Appendix 1. If the claimant is found to meet or equal the requirements of a listed impairment, an award of benefits is automatic.

Listing 12.04, Affective Disorders, provides: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following:
a. Anhedonia or pervasive loss of interest in almost all activities; or
b. Appetite disturbance with change in weight; or
c. Sleep disturbance; or
d. Psychomotor agitation or retardation; or
e. Decreased energy; or
f. Feelings of guilt or worthlessness; or
g. Difficulty concentrating or thinking; or
h. Thoughts of suicide; or
i. Hallucinations, delusions, or paranoid thinking; or
2. Manic syndrome characterized by at least three of the following:
a. Hyperactivity; or
b. Pressure of speech; or
c. Flight of ideas; or
d. Inflated self-esteem; or
e. Decreased need for sleep; or
f. Easy distractibility; or
g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
h. Hallucinations, delusions or paranoid thinking; or
3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes); AND
B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration. . . .

Listing 12.06, Anxiety Related Disorders, provides:

In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.

A. Medically documented findings of at least one of the following:

1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
a. Motor tension; or
b. Autonomic hyperactivity; or
c. Apprehensive expectation; or
d. Vigilance and scanning; or
2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or
3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or
4. Recurrent obsessions or compulsions which are a source of marked distress; or
5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress; AND
B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or

has difficulty concentrating and sleeping: she has decreased energy: and she has feelings of worthlessness. As to part B, Plaintiff has difficulties in maintaining social functioning and has repeated episodes of deterioration and decompensation. (Tr. at 21). Dr. Haykal opined that Plaintiff would not be able to work for any sustained period of time. (Tr. at 28). According to Dr. Haykal, Plaintiff's condition will persist over the next twelve months. (Id.).

Plaintiff's Global Assessment Functioning ("GAF")[2] scores during the period she was treated by Dr. Haykal ranged from a low of 58 to a high of 70.[3]

| | | | |
|---|---|---|---|
| January 1995 | 70 | June 1997 | 65 |
| May 1995 | 66 | September 1997 | 63 |
| August 1995 | 60 | October 1997 | 58 |
| September 1995 | 66 | November 1997 | 63 |
| October 1995 | 66 | January 1998 | 63 |
| December 1995 | 61 | July 1998 | 60 |
| January 1996 | 65 | August 1998 | 67 |
| May 1996 | 66 | October 1998 | 63 |
| June 1996 | 61 | December 1998 | 70 |
| August 1996 | 66 | February 1999 | 64 |
| October 1996 | 66 | March 1999 | 59 |
| May 1997 | 66 | | |

(Tr. at 403A—412).

In 1998, Wally Juraschka, Ph.D., began treating Plaintiff for post-traumatic stress disorder, specifically to "help her gain understanding and control of erratic mood swings, temper outbursts, agitation, depression and inconsistent sleep patterns."

(Tr. at 307). According to Dr. Juraschka, Plaintiff "is capable of understanding what is going on around her, [but] sustained concentration is a problem due to emotional influences and social interaction is also influenced by mood swings and temper outbursts. This clearly affects her ability to adapt to new situations and effectively cope with routine stress." (Id.). As of December 1998, Plaintiff was still influenced by mood swings and problems with sustained concentration, social interaction and adaptation. (Tr. at 306).

Dr. Juraschka testified on deposition in March 1999 that Plaintiff satisfied Parts A and B of Listing 12.06—Anxiety Related Disorders, supra. According to Dr. Juraschka, Plaintiff is driven by fear and apprehension, which symptoms stem from memories of sexual assault by her father. (Tr. at 337). Dr. Juraschka characterized Plaintiff's case as severe. (Id.). As to tasks of daily living, Dr. Juraschka noted that Plaintiff cares for herself appropriately but has trouble cooking and preparing meals. (Tr. at 345). Further, she stays in bed a lot because she feels overwhelmed, wiped out and depressed by tasks such as preparing meals and being attentive to her daughter's homework. (Tr. at 346). Plaintiff does not have any friends and her only social interaction is through Alcoholics Anonymous meetings. (Tr. at 349).

---

4. Repeated episodes of decompensation, each of extended duration....
20 C.F.R., Part 404, Subpart P, Appendix 1, Listings 12.04 and 12.06.

2. The GAF rates "overall psychological functioning" on a scale of 0 to 100, with the latter number indicating "superior functioning." Ladwig v. Commissioner of Social Security, No. 00–6585, 2002 WL 1491872 (6th Cir. July 11, 2002), citing AMERICAN PSYCHIATRIC ASSOCIATION DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. 2000).

3. A score of 58 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).

A score of 70 indicates some mild symptoms (e.g. depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within household), but generally functioning pretty well, has some meaningful interpersonal relationships. AMERICAN PSYCHIATRIC ASSOCIATION DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. 2000).

Dr. Juraschka opined that Plaintiff is not able to tolerate stress in a normal work environment. (Tr. at 347). Further, Plaintiff's medications prevented her from working because the medications affect her sleep and rest. (Tr. at 359–60). Dr. Juraschka believed that Plaintiff will require treatment for at least another year. (Tr. at 358; 362).

In September 1998, Plaintiff underwent a consultative psychological examination by Floyd Covey, Ph.D. (Tr. at 234). Dr. Covey noted that Plaintiff's medication regime, which at the time consisted of Depakote, Synthroid, Neurontin and Effexor, was closely monitored. (Tr. at 235). Dr. Covey characterized Plaintiff as having a fair level of initiative as to tasks of daily life but noted that the same is affected by her mood swings. (Id.). Dr. Covey noted that Plaintiff exhibited social withdrawal and that, due to her emotional disturbances, she would have difficulty concentrating in a group environment. (Tr. at 237–38). Plaintiff scored a 29 out of 30 possible points on a mini-mental status examination administered by Dr. Covey. (Tr. at 237).

On September 24, 1998, consulting physician Lewis I. Loskovitz, M.D., examined Plaintiff. (Tr. at 253). Dr. Loskovitz noted that Plaintiff suffered from chronic depression and spells of mania. Plaintiff reported that due to her depression, she cries and sleeps mostly during the day. (Tr. at 253). Plaintiff presented to Dr. Loskovitz with complaints of daily headaches, stomach pain and irritable bowel syndrome. (Id.). Dr. Loskovitz diagnosed Plaintiff with manic depression disorder, severe; asthma; peptic ulcer disease; irritable bowel syndrome; chronic back pain; and degenerative disc disease. (Tr. at 254). In 1995, Plaintiff was diagnosed with abdominal pain, irritable bowel syndrome, weakness and fatigue. (Tr. at 205).

In 1998, Plaintiff was also treated for sinusitis and bronchospasm. (Tr. at 297).

In December 1998, Ms. Julia Dennis, a social worker who had been treating Plaintiff since 1992, noted that Plaintiff's memory, concentration, persistence, social interaction and capacity for adaptation were all impaired by her mental conditions. (Tr. at 311). Further, Plaintiff had difficulty meeting the demands of parenting a school age child and running a household alone. (Id.). Ms. Dennis opined that Plaintiff would not be capable of even part-time employment until her mental conditions were more stabilized. (Id.). On deposition in March 1999, Ms. Dennis opined that Plaintiff satisfied the criteria of Listing 12.04 Parts A and B—Affective Disorder. (Tr. 454–56).

The record contains several daily activity questionnaires completed by Plaintiff. The most recent, completed in November 1998, reveals that Plaintiff has problems sleeping at night due to her medication; Plaintiff reports having to nap during the day. (Tr. at 171). Plaintiff states that she cares for herself and her child and takes her child to school. (Tr. at 172). Plaintiff prepares limited meals and completes household chores when she feels well enough to do so. (Id.). Plaintiff grocery shops two to three times per week and shops for her own clothing. (Tr. at 173). Plaintiff also reads when she can but can only concentrate for 15–30 minutes at a time. (Id.). Plaintiff visits with friends one to two times per month. (Tr. at 174). Plaintiff also attends AA meetings two to three times per week. (Tr. at 175).

## II.

On December 9, 1999, the ALJ issued a written decision denying Plaintiff's request for disability benefits. The ALJ found that Plaintiff's conditions of bipolar affective disorder and post-traumatic stress dis-

order constitute a "severe impairment" within the meaning of the Social Security Act "in that they have more than a minimal effect on the claimant's ability to perform work-related activities." (Tr. at 15). The ALJ concluded, however, that the conditions, either singly or combined, do not meet or equal in severity any of the listed impairments in the regulations. Consequently, the ALJ went on to consider whether Plaintiff could return to her past work or whether she could perform on a sustained basis any other work that exists in significant numbers in the national economy. To this end, the ALJ assessed Plaintiff's residual functional capacity in light of the medical evidence and the credibility of Plaintiff's allegations. (Tr. at 15).

The ALJ first considered Plaintiff's physical capacity for work. As to Plaintiff's claim of irritable bowel syndrome and severe headaches, the ALJ concluded that because the record demonstrates no medical treatment for the same for nearly three years, the conditions are not chronic disabling medical problems. (*Id.*). In addition, the ALJ discredited Dr. Lewis Loskovitz's diagnoeses of degenerative disc disease and back pain since the assessment was unsupported by objective medical evidence and appeared to simply be a restatement of complaints reported to him by Plaintiff. (Tr. at 17). In sum, the ALJ concluded that the record did not support any finding of severe physical impairment to work.

As to Plaintiff's mental capacity for work, the ALJ noted Plaintiff's history of treatment for bipolar and post-traumatic stress disorders. The ALJ stated that Dr. Haykal's records provide the most detailed documentation of Plaintiff's condition. (Tr. at 19). The ALJ concluded that, while Plaintiff exhibited mood swings over the years, Dr. Haykal's notes indicate that she responded well to medication and as of December 1998 was showing signs of steady improvement. (*Id.*). The ALJ also reviewed Plaintiff's GAF scores and noted that, according to the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders,* a GAF of between 61 to 70 indicates only "some mild symptoms." (*Id.*). The term "mild" is defined as "causing only minor impairment of social or occupational functioning." (Tr. at 20). Based on this authority, the ALJ concluded that there was an absence of symptoms persisting for 12 continuous months at a level of severity that would prevent Plaintiff from performing any type of work. (*Id.*).

The ALJ noted Dr. Haykal's opinion that Plaintiff satisfied the criteria for Affective Disorder in Listing 12.04 Parts A and B but discredited the same because "[i]t is significant that for several years prior to July 1995 the [Plaintiff] had engaged in substantial gainful activity in a very mentally exacting job." (Tr. at 22). Further, the ALJ noted that Dr. Haykal's records failed to document any repeated episodes of deterioration or decompensation as testified to on deposition. (*Id.*). The ALJ found Dr. Haykal's numerous GAF notations and clinical observations "plainly inconsistent with the chronic disabling mental illnesses that they opined to be present." (Tr. at 23). The ALJ noted the opinions of Dr. Juraschka and Ms. Dennis but did not give them great weight since Dr. Haykal had the most clinical contact with Plaintiff.

The ALJ further concluded that Dr. Covey's report of September 1998 does not support a finding of a disabling mental impairment. (Tr. at 20). With respect to Plaintiff's complaints, the ALJ observed that Plaintiff is able to do her own housework and care for her child although she requires help cooking. (Tr. at 21). Further, in December 1997, Plaintiff complet-

ed one semester of college and made the dean's list. (*Id.*). The ALJ concluded that Plaintiff's activities "particularly with her successfully completing a semester of college with a full academic load and functioning as a single parent of a small child, are simply not reflective of a chronic incapacitating mental disorder." (*Id.*).

Nonetheless, the ALJ found that the record supported a finding that Plaintiff "suffers from mental illness which does affect her ability to concentrate." (Tr. at 24). The ALJ concluded that Plaintiff's mental residual functional capacity "is reduced to the extent that she is limited to performing only work which does not require any significant interaction with the public or the ability to understand, remember or carry out detailed or complex job instructions." (*Id.*). The ALJ concluded that Plaintiff could not perform her past work in the insurance industry because the job required a high level of focus and interpersonal interaction.

In light of this conclusion, the ALJ went on to consider whether the Commissioner had shown that there were jobs existing in significant numbers in the national economy which Plaintiff could perform. Using Sections 204.00 and 203.00 of the Medical Vocational Guidelines, the ALJ concluded that Plaintiff had the mental residual functional capacity to perform a variety of other unskilled jobs. Thus, the ALJ concluded that Plaintiff is not under a disability for purposes of the Social Security Act.

### III.

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ used proper legal standards in reaching his or her conclusion. *Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir.1989). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir.2001) (citation omitted). The ALJ's findings must be affirmed if supported by substantial evidence even though substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir.1996). When considering the issue on appeal, this Court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984).

Under the Social Security Act, a five-step analysis is used to determine whether a claimant is entitled to benefits. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir.1990). First, claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time disability benefits are sought. *Id.* (citing 20 C.F.R. § 404.1520(b)). Second, the claimant must show that she suffers from a "severe impairment." A severe impairment is one which "significantly limits ... physical or mental ability to do basic work activities." *Id.* (quoting 20 C.F.R. § 404.1520(c)). Third, if plaintiff's severe impairment is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education, or work experience. 20 C.F.R. § 404.1525(a). Fourth, the claimant's impairment must prevent her from performing her past relevant work. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir.2001). Fifth, even if the plaintiff's impairment prevents her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled. *Id.*

At the third step of the analysis, the claimant has the burden of establishing that he or she meets a listed impairment. *Evans v. Sec'y of Health and Human Ser-*

*vices,* 820 F.2d 161, 164 (6th Cir.1987). An impairment meets a Listing only when it manifests the specific findings described in the medical criteria for the particular impairment. 20 C.F.R. § 404.1525(d). If the claimant satisfies the first three steps of the analysis, he or she is presumed disabled without further inquiry. *Walters v. Commissioner of Social Security,* 127 F.3d 525, 529 (6th Cir.1997).

## IV.

The Plaintiff raises fourteen issues on appeal. First, Plaintiff argues that the ALJ erred in failing to consider the side effects of Plaintiff's medications which require her to take naps during the day. Second, Plaintiff argues that the ALJ improperly concluded that Plaintiff did not satisfy Listings 12.04 and 12.06 when her treating physicians concluded that she had satisfied the same. Third, Plaintiff argues that the ALJ improperly relied on SSR 85–15 and Grid Rule 203 in concluding that Plaintiff was capable of performing other unskilled work. Fourth, Plaintiff argues that the ALJ improperly substituted his lay opinion for competent medical testimony of Plaintiff's psychiatrist, psychologist and therapist. Fifth, Plaintiff argues that the ALJ improperly discredited Dr. Haykal's opinion by using a psychiatry text. Sixth, Plaintiff argues that the ALJ improperly attempted to evaluate Plaintiff's medical condition based on his lay analysis of Plaintiff's daily activities. Seventh, Plaintiff argues that the ALJ erred in failing to give deference to the uncontradicted opinions of Plaintiff's treating medical caregivers. Eighth, Plaintiff argues that the ALJ erred in giving greater weight to non-examining medical consultants rather than to Plaintiff's treating psychiatrist, psychologist and therapist. Ninth, Plaintiff argues that the ALJ erred in finding that because Plaintiff successfully completed one semester of college that she could engage in substantial gainful activity. Tenth, Plaintiff argues that the ALJ erred in failing to consider Plaintiff as a "whole person" with respect to her physical and mental limitations. Eleventh, Plaintiff argues that the ALJ improperly evaluated the report of Dr. Covey by finding that parts of the report support a denial of benefits while other portions establish the existence of a disability. Twelfth, Plaintiff argues that the ALJ improperly substituted his own opinion when evaluating the opinion of Dr. Loskovitz. Thirteenth, Plaintiff argues that the ALJ improperly evaluated social security records which show that Plaintiff takes her daughter to school and pays her bills, in concluding that Plaintiff is capable of performing tasks within a schedule. Fourteenth, Plaintiff argues that the ALJ's decision is not based on substantial evidence.

The Commissioner seeks remand of this case to the ALJ pursuant to 42 U.S.C. § 405(g). The statute provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia. As part of the Commissioner's answer the Commissioner of Social Security shall file a certified copy of the transcript of the record including the evidence upon

which the findings and decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with our without remanding the cause for a rehearing....

The Commissioner argues that remand is necessary to allow the ALJ to re-evaluate and articulate a rationale for the weight afforded to the medical opinions of record. In addition, the Commissioner contends that the ALJ should obtain vocational expert testimony to determine whether Plaintiff can perform a significant number of jobs in the national economy.

The Plaintiff opposes remand for two reasons: First, Plaintiff contends that the issue cannot be considered because it was not presented to the district court. Second, Plaintiff argues that the record supports an award of benefits. For the reasons stated below, remand is not warranted. Concomitantly, Martin is entitled to an award of benefits on the record presently before the Court.

### V.

 The district court concluded that the ALJ's findings were supported by substantial evidence and that the ALJ employed the proper legal standards in reaching his conclusion. Both the Commissioner and the Plaintiff take issue with the ALJ's rejection of the opinions of Dr. Haykal and Dr. Juraschka. Dr. Haykal testified that Plaintiff satisfied the criteria of Listing 12.04 and Dr. Juraschka testified that Plaintiff satisfied Listing 12.06. Both doctors opined that the condition would persist for at least twelve months. In addition. Ms. Dennis opined that Plaintiff satisfied Listings 12.04 and 12.06.

A treating physician's opinion regarding disability is not conclusive of the issue, but the opinion is entitled to great weight if supported by objective medical findings. *Houston v. Sec'y of Health and Human Services,* 736 F.2d 365, 367 (6th Cir.1984), and if not contradicted by substantial evidence to the contrary. *Hardaway v. Sec'y of Health and Human Services,* 823 F.2d 922, 927 (6th Cir.1987). Thus, the ALJ is not bound by the opinion of a treating physician if the opinion is contradicted by objective medical evidence. *Cohen v. Sec'y of Health and Human Services,* 964 F.2d 524, 528 (6th Cir.1992). The Commissioner may consider the opinion of nonexamining medical consultants in determining whether Plaintiff is disabled. 20 C.F.R. § 404.1527(f).

In this case, the ALJ discredited the conclusions of Dr. Haykal, Dr. Juraschka and Ms. Dennis by focusing on other objective medical evidence in the record. First, the ALJ noted Plaintiff's GAF scores during the time of her treatment. (Tr. at 19). The ALJ concluded that, under the *Diagnostic and Statistical Manual of Mental Disorders,* Plaintiff had only mild symptoms which affirmatively demonstrated the absence of psychiatric symptoms persisting for a twelve month period. (Tr. at 20). The ALJ also relied on Dr. Covey's clinical observations and Plaintiff's own statements presented on the daily activity questionnaires in reaching his conclusion. The ALJ stated that he "does not dispute the fact that the claimant has a significant degree of mental illness...." (Tr. at 22). Further, the ALJ concluded that Plaintiff's illness limited her to performing work which does not require "any significant interaction with the public or the ability to understand, remember, or carry out detailed or complex job instructions." (Tr. at 24). Thus, although the ALJ discredited the treating physicians' testimony, he nonetheless found that Plaintiff's illness prevented her from performing her prior work.

Martin points out that her treating physician and psychologist both agreed that she meets the requirements of the listed impairment of Affective Disorder, 12.04, and Anxiety Related Disorders, 12.06. The ALJ, however, discredited these opinions based upon his contrary interpretation of the GAF scores of record, his interpretation of Plaintiff's activity logs and the consultative evaluation of Dr. Covey.

Dr. Haykal is a psychiatrist who has treated Plaintiff on a regular basis for over a decade. In a documented, reasoned narrative opinion, he has specifically described conditions and effects which, if credited, demonstrate that Martin suffers from a listed impairment under Listing 12.04 of 20 C.F.R., Part 404, Subpart P, Appendix 1. He diagnosed Plaintiff as suffering from affective disorder which prevents her from concentrating and sleeping. He also described her as exhibiting difficulty in maintaining social functioning with repeated episodes of deterioration and decompensation. Dr. Juraschka has provided narrative reports which support Dr. Haykal's conclusions. In contrast, Dr. Covey is a consulting psychologist who examined Plaintiff in 1998. After administering a mini-mental status examination, Covey concluded that Plaintiff has significant mood swings that affect her daily living, including her ability to concentrate in a group environment. Covey noted, however, that Plaintiff was able to control her anxiety and displayed a motivation to be successful. The ALJ focused on the latter part of Covey's analysis to bolster his opinion that Plaintiff did not have symptoms "reflective of a disabling degree of mental impairment." (Tr. at 20).

As we have long held, "the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." *Howard v. Commissioner,* 276 F.3d 235, 240 (6th Cir. 2002), citing *Harris v. Heckler,* 756 F.2d 431, 435 (6th Cir.1985).

In this case, the ALJ disregarded the conclusions of Plaintiff's treating physicians and instead relied on his own interpretation of Plaintiff's GAF scores, and daily activity logs. No physician or medical expert of record in this case indicated that GAF scores, by themselves, provide a sound basis for a diagnosis. It is clear that Dr. Haykal based his opinion on a variety of factors, only one of which was the GAF scoring. Further, no medical expert opined that the GAF scores provided a basis for discrediting the opinion of the treating physician.

The GAF scores do not actually contradict the conclusions reached by the treating physician. The scores demonstrate "moderate symptoms" and, at best, "some mild symptoms." In the absence of a medical opinion refuting or discrediting the treating physician, whose opinions are supported by other medical reports of record, the ALJ's own view of the GAF scores and Plaintiff's activity log do not constitute substantial evidence sufficient to overcome the deference owed to the conclusion of Dr. Haykal. Further, the ALJ's reliance on the opinion of Dr. Covey does not constitute substantial evidence sufficient to overcome the opinions of Plaintiff's treating physicians that Plaintiff satisfies the listed impairments at 12.04 and 12.06. Dr. Covey offers no opinion on whether Plaintiff satisfies the Listings. Moreover, contrary to the ALJ's review, Dr. Covey's findings are consistent with those of the treating physicians. This Court has held that "[t]he opinion of a treating physician is entitled to weight substantially greater than that of a doctor who has seen the claimant only once." *Hardaway v. Sec'y of Health & Human Services,* 823 F.2d 922, 927 (6th Cir.1987), citing *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir.1978).

Moreover, if a treating physician's opinion is not contradicted, it is owed complete deference. *Walker v. Sec'y of Health and Human Services,* 980 F.2d 1066, 1070 (6th Cir.1992).

In this case, as in *Walker,* the opinions of Drs. Haykal and Juraschka are entitled to complete deference in that the conclusions are uncontradicted. The ALJ erred in disregarding the opinions of the treating physicians by instead relying on his own interpretations of Plaintiff's GAF scores and activity logs.

■ In view of the opinions of Plaintiff's treating physicians, there exists substantial evidence of Plaintiff's disability. This Court may reverse a decision of the district court and immediately award benefits if it determines that "substantial evidence does not support the Secretary's decision ... [and] if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.... A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary lacking." *Felisky v. Bowen,* 35 F.3d 1027, 1041 (6th Cir.1994) *citing Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir.1994).

In this case, proof of disability is strong and there is no evidence to the contrary. Consequently, we reverse the district court and instruct the court to remand for an award of benefits.

## VI.

We **REVERSE** the district court and **REMAND** with instructions for the dis-

trict court to remand the case for an award of benefits.

MOORE, Circuit Judge, dissenting.

I agree with the majority that we should vacate the decision of the Commissioner of Social Security ("Commissioner") to deny Robin Martin ("Martin") benefits because substantial evidence did not support that decision. However, I respectfully dissent from the majority's decision to remand with instructions for the district court to remand the case for an award of benefits to Martin. Rather than instructing the district court to remand for an award of benefits, I would instruct remand so that the administrative law judge ("ALJ") might "reevaluate and provide [a] rationale for the weight given to the Plaintiff's treating psychiatrist and psychologist, and if warranted, obtain evidence from a medical expert and vocational expert." Motion to Remand at 2.

The fourth sentence of 42 U.S.C. § 405(g) gives courts "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." A district court therefore has authority to remand under sentence four, and in fact is *"obliged* to do so if all of the essential factual issues have not yet been resolved."[1] *Newkirk v. Shalala,* 25 F.3d 316, 318 (6th Cir.1994). "While a remand request is normally made by a party, there is no reason why a court may not order the remand sua sponte." *Igonia v. Califano,* 568 F.2d 1383, 1387 (D.C.Cir.1977); *see*

---

1. In *Newkirk v. Shalala,* 25 F.3d 316 (6th Cir.1994), this court concluded that it was unable to determine whether the district court had concluded that all factual issues were resolved. Because it was unclear whether the case needed to be remanded to the Commissioner, this court reversed judgment in favor

of the plaintiff and remanded to the district court for reconsideration, explaining, "[i]f upon reconsideration, the district court determines that some factual issues still remain to be resolved, we instruct the court to remand the case to the Secretary for further factfinding." *Id.* at 318. If this court were to deter-

*Murray v. Schweiker*, 555 F.Supp. 573, 575 (D.Mont.1982). Therefore, although the Commissioner did not move in the district court for a remand to the ALJ, this court must decide whether a remand for the award of benefits or for further consideration is appropriate in this case.

Even in cases where the Commissioner concedes that substantial evidence does not support the ALJ's decision, this court will "immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir.1994); *see Newkirk*, 25 F.3d at 318. A claimant is not clearly entitled to benefits unless "the proof of disability is overwhelming or ... the proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176. Thus, where there is evidence contrary to a finding of disability, proof of disability is unlikely to be overwhelming and cannot be considered strong.

In this case, the Commissioner recognizes that substantial evidence does not support the ALJ's finding of no disability, while the ALJ and the district court point to evidence that would contradict a finding of disability. The district court concluded that objective medical evidence in the record discredited the opinions of Martin's treating physicians, and therefore supported the ALJ's finding that Martin was not disabled. "The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985). Martin's treating physicians concluded that Martin met the criteria for two listing-level impairments. However, the ALJ concluded that these

opinions were undermined by other objective evidence: (1) Martin's Global Assessment Functioning scores indicated only "some mild symptoms." suggesting the absence of psychiatric symptoms persisting for twelve months; (2) one physician observed that in spite of Martin's significant mood swings, she was able to control her anxiety and was motivated to succeed; and (3) Martin's responses on daily activity questionnaires indicated that she "is capable of performing activities within a schedule and sustaining a routine." Administrative Record ("Admin.R.") at 20, 23. The ALJ's and district court's conclusions that this evidence is contrary to a finding of disability demonstrate that all essential factual issues have yet to be resolved, and thus that it would be inappropriate to award benefits immediately. Rather, in accord with the Commissioner's request, I would remand this case to the ALJ so that he can "reevaluate and provide [a] rationale for the weight given to the Plaintiff's treating psychiatrist and psychologist." Motion to Remand at 2.

I would additionally instruct the district court to remand so that the ALJ might also obtain evidence from medical and vocational experts. The ALJ found that Martin was not disabled because, although her impairment prevented her from doing past relevant work, she could perform unskilled jobs available in significant numbers the national economy. But the record does not include substantial evidence that Martin was able to perform unskilled work. In fact, the ALJ specifically concluded that Martin "is limited to performing only work which does not require any significant interaction with the public or the ability to understand, remember, or carry out detailed or complex job instructions," Admin. R. at 24, which "would

---

mine that all factual issues in a case had not been resolved, it could also remand to the district court with instructions to remand to

the ALJ for further factfinding, rather than directing the district court to decide whether further factfinding is necessary.

appear to preclude the full range of work contemplated by the Medical–Vocational Guidelines." Appellee's Brief at 21. As explained above, "when there is not substantial evidence to support one of the ALJ's factual findings and his decision therefore must be reversed, the appropriate remedy is not to award benefits. The case can be remanded under sentence four of 42 U.S.C. § 405(g) for further consideration." *Faucher*, 17 F.3d at 175–76. Therefore, I would also direct the district court to remand this case to the ALJ for the purpose of allowing further factfinding, such as the consultation of a vocational expert, regarding Martin's ability to perform jobs available in the national economy.