85 F.3d 629
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Nellie L. PEEBLES, Plaintiff-Appellant,
v.
Shirley CHATER, Commissioner SSA, Defendant-Appellee.
 No. 95-5627.
 United States Court of Appeals, Sixth Circuit.
 May 6, 1996.
 
 Before: MILBURN and BOGGS, Circuit Judges; and QUIST, District Judge.*
 MILBURN, Circuit Judge.
 
 
 1
 Claimant Nellie L. Peebles appeals the district court's grant of summary judgment affirming the Secretary's termination of her disability and supplemental income benefits under the Social Security Act, 42 U.S.C. § 405(g). On appeal, the issues are (1) whether the Secretary failed to fully and fairly develop the facts concerning claimant's anxiety and hypertension and their effects on her ability to perform light work, (2) whether the Secretary erred in using the wrong definition of light work, (3) whether the Secretary failed to consider fully the testimony of the vocational expert, and (4) whether the Secretary failed to consider whether or not the claimant was illiterate in determining her ability to engage in substantial gainful activity. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 Claimant was born on March 1, 1941. She completed her formal education through the tenth grade, and testified that she can read a newspaper, although she is sometimes confused by big words.[1] R. 481, 491.
 
 B.
 
 3
 Claimant filed an application for disability insurance benefits on January 15, 1976, alleging disability beginning October 19, 1975, when she sustained a severe laceration to her left wrist which caused extensive motor and neurological damage. In a determination dated February 17, 1976, the state agency ("agency") found that claimant was disabled as of October 19, 1975, and awarded benefits. In a medical re-examination dated May 27, 1977, the agency found that claimant's disability ceased as of April 1977. On reconsideration, the agency upheld the initial cessation determination on November 17, 1977. Claimant then requested a hearing regarding the cessation of her benefits, and in a decision dated March 24, 1978, the administrative law judge ("ALJ") affirmed the cessation determination.
 
 
 4
 Subsequently, on April 2, 1979, claimant filed applications for disability insurance benefits and supplemental security income, again alleging disability beginning on October 19, 1975. Following denial of her claim initially and upon reconsideration, claimant timely requested a hearing. In a decision dated June 13, 1980, an ALJ found claimant not disabled and denied benefits. Claimant appealed this determination, and on October 8, 1980, the appeals council affirmed the ALJ's decision, which then became the final decision of the Secretary. Claimant then sought judicial review of the Secretary's decision in the district court. In a district court order dated May 5, 1981, the district court found that the claimant was disabled and remanded the case to the Secretary with instructions to award disability benefits and supplemental security income benefits. Based upon the district court's order, the agency, on August 12, 1981, found that claimant had been disabled since July 1, 1977.
 
 
 5
 Based upon a subsequent medical re-examination, the agency, in a determination dated September 14, 1982, found that claimant's disability had ceased as of September 1982, and as a result, her disability benefits ceased as of the last day of November 1982. Claimant then requested a hearing, and in a decision dated March 25, 1983, an ALJ affirmed the cessation determination. Claimant appealed the decision and on July 11, 1983, the appeals council affirmed the ALJ's decision.
 
 
 6
 On December 27, 1985, the Secretary sent claimant a letter notifying her that she might be eligible for a redetermination of her claims pursuant to the class action pending at the time and ultimately decided in Samuels v. Heckler, 668 F.Supp. 656 (W.D.Tenn.1986). On April 23, 1986, the agency determined that claimant was a Samuels class member. Consequently, the agency conducted a revised determination on December 8, 1986, and found that claimant's disability continued. However, because the claimant returned to work for short periods in 1984 and 1985, the Secretary withheld benefits for those periods when claimant had been working and earning wages.
 
 
 7
 Subsequently, in a determination dated August 16, 1988, the agency found that claimant's disability had ceased as of August 1988, and her benefits were terminated on the ground that her impairments had improved and would not interfere with her ability to engage in substantial gainful activity. In a reconsideration dated August 22, 1989, the cessation of benefits was affirmed. Claimant filed a timely request for a hearing, which was held before an ALJ on January 23, 1990. In a decision dated February 26, 1990, the ALJ found that claimant was no longer disabled. Claimant timely appealed the ALJ's decision, and on January 3, 1991, the ALJ's decision became the final decision of the Secretary when the appeals council denied claimant's request to review the ALJ's decision.
 
 
 8
 Claimant then sought judicial review of the Secretary's final decision in the district court. After both parties filed motions for summary judgment, the matter was referred to a magistrate judge, who, on November 6, 1991, issued a report and recommendation in which he recommended that summary judgment be granted in favor of the Secretary on the ground that claimant was not disabled due to her hand, heart, or stomach problems. However, the magistrate judge recommended that the claim be remanded for the purpose of evaluating the effects of claimant's anxiety and hypertension on her ability to perform light work. After de novo review, the district court adopted the report and recommendation on January 23, 1992.
 
 
 9
 A supplemental hearing was held pursuant to the district court's limited order of remand before the ALJ on June 11, 1992. In a decision dated August 12, 1992, the ALJ again found that claimant's disability had ceased in August 1988 and that her eligibility for benefits terminated on the last day of October 1988. On March 25, 1993, the appeals council denied claimant's request for a review of the ALJ's decision.
 
 
 10
 Again, judicial review was sought, and the matter was referred to a magistrate judge. On February 9, 1995, the magistrate judge issued his fourth report, recommending that summary judgment be granted in favor of the Secretary. After de novo review, the district court issued a memorandum and order, on March 6, 1995, adopting the magistrate judge's report and recommendation and granting summary judgment in favor of the Secretary. This timely appeal followed.
 
 II.
 A.
 
 11
 Claimant argues that the ALJ failed to fully and fairly develop the facts regarding her anxiety and hypertension before issuing his decision and order on remand. Specifically, she asserts that "[t]he ALJ and the Appeals Council did not order any necessary consultative psychological/psychiatric examinations to determine her limitations and psychological residual functional capacity." Appellant's brief at 9. According to claimant, because the vocational expert ("VE") responded to one of the questions asked by her counsel at the most recent hearing by stating that "[w]ithout being given the parameters of the stress levels and anxiety levels I cannot accurately answer your question," R. 461, the failure to fully develop the record was prejudicial error.
 
 
 12
 We review a "district court's grant of summary judgment de novo." Walker v. Secretary of Health & Human Servs., 980 F.2d 1066, 1069 (6th Cir.1992) (citing Leila Hosp. & Health Ctr. v. Xonics Medical Sys., Inc., 948 F.2d 271, 273 (6th Cir.1991) and E.E.O.C. v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990)). Furthermore, pursuant to 42 U.S.C. § 405(g), this court has jurisdiction to review the Secretary's decisions. Judicial review of the Secretary's decision is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards in reaching her conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971).
 
 
 13
 Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Kirk v. Secretary of Health and Human Servs., 667 F.2d 524, 535 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983). This court does not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility. See Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984).
 
 
 14
 A social security disability claimant bears the ultimate burden of proof on the issue of disability. See Richardson v. Heckler, 750 F.2d 506, 509 (6th Cir.1984). However, once a claimant makes out a prima facie case that she cannot perform her usual work due to her disability, the burden of proof then shifts to the Secretary to show that there is work in the national economy which the claimant can perform. Martonik v. Heckler, 773 F.2d 236, 239 (8th Cir.1985); Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980). The Secretary must prove that having considered the claimant's present job qualifications, such as age, experience, education, and physical capacity, and the existence of jobs to match those qualifications, the claimant retains the capacity to perform a different kind of job. See Young v. Secretary of Health and Human Servs., 925 F.2d 146, 148 (6th Cir.1990).
 
 
 15
 A VE is generally consulted where a claimant has significant non-exertional limitations. See Buck v. Bowen, 885 F.2d 451, 455 (8th Cir.1989); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir.1988). The testimony of a VE must be based on a hypothetical question which accurately portrays the claimant's physical and mental impairments. See Varley v. Secretary of Health and Human Servs., 820 F.2d 777, 779 (6th Cir.1987).
 
 
 16
 The standard of review for the termination of disability benefits is codified at 42 U.S.C. § 423(f), which provides in relevant part that
 
 
 17
 [a] recipient of benefits under this subchapter or subchapter XVIII of this chapter based on the disability of any individual may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabiling only if such finding is supported by--
 
 
 18
 (1) substantial evidence which demonstrates that--
 
 
 19
 (A) there has been any medical improvement in the individual's impairment or combination or impairments (other than medical improvement which is not related to the individual's ability to work), and
 
 
 20
 (B)(i) the individual is now able to engage in substantial gainful activity....
 
 
 21
 Difford v. Secretary of Health & Human Servs., 910 F.2d 1316, 1318 (6th Cir.1990) (quoting 42 U.S.C. § 423(f)). Thus,
 
 
 22
 [t]his case turns on whether substantial evidence shows that (1) there has been medical improvement in [claimant's] impairment (other than improvement which is not related to her ability to work), and (2) she now has the ability to engage in substantial gainful activity. See 42 U.S.C. § 423(f)(1). If substantial evidence supports both prongs, then the Secretary correctly terminated [claimant's] benefits. The decision whether to terminate benefits must "be made on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled." Id. § 423(f).
 
 
 23
 Cutlip v. Secretary of Health & Human Servs., 25 F.3d 284, 286 (6th Cir.1994).
 
 
 24
 In his decision of February 26, 1990, the ALJ concluded that since August of 1988 claimant had been capable of a limited range of light work. Specifically, the ALJ found that she was limited to a range of light work which would not require significant use of her non-dominant left hand or arm. The VE identified jobs such as a guard, door attendant, gate attendant, parking lot attendant, cashier at a self-service gas station which could be performed by a person of claimant's age, education, and work experience who was capable of a limited range of light work not involving significant use of her non-dominant hand. The VE testified that these jobs would not require lifting more than ten pounds and only a small amount of writing. R. 43-44.
 
 
 25
 These findings by the ALJ are consistent with the report of Dr. Reuben Bueno, the surgeon who repaired claimant's left hand after her October 19, 1975 injury, who stated in a letter, dated May 19, 1977, that claimant would be able to return to "light work, primarily using her right hand," in January 1978. R. 102. In a subsequent letter dated September 1977, Dr. Bueno stated that he reexamined claimant and stated that he detected even more improvement in the overall condition of her hand. He also stated that she should be considered disabled for another six months. R. 106. Furthermore, claimant testified that she had taken no medication for her hand or arm, and had received no treatment for it since the early 1980s. R. 35-36.
 
 
 26
 Although Dr. Bueno's reports from the late 1970s and claimant's testimony that she had taken no medication or received treatment for her left arm since the early 1980s refer to a period prior to the Secretary's final decision that claimant's disability had ceased as of August 1988, we believe that the ALJ was entitled to rely on this evidence in determining that there had been a medical improvement in the condition of claimant's left hand. Dr. Bueno's reports from the late 1970s show that the condition of claimant's left hand was subject to and had manifested signs of improvement. Further, claimant's own admission that she had required neither medication nor treatment for her left hand since the early 1980s in conjunction with the later medical records show that there had been an improvement in the condition of her left hand. Thus, we conclude that substantial evidence supports the ALJ's finding that there has been a medical improvement of the impairment involving claimant's left hand.
 
 
 27
 However, the case was remanded for the limited purpose of evaluating the effect of claimant's anxiety and hypertension on her ability to perform light work. Claimant's hypertension is well documented.
 
 
 28
 In his decision and order, the ALJ found that claimant's anxiety and hypertension were adequately considered in the determination of her ability to work and in the finding as to jobs which she could perform. R. 438. In particular, the ALJ relied on Dr. Patikas's report, which stated that Peebles's hypertension would impose the limitations on claimant's RFC as indicated in the document. Furthermore, the ALJ also found that there was indication in the record that claimant's hypertension was controlled by medication. Claimant now asserts that the ALJ erred (1) in relying on Dr. Patikas's assessment because she was not a treating physician, and (2) in not fully developing the facts, by adding additional consultative evaluations, before reaching his decision.
 
 
 29
 A " 'full inquiry' does not require a consultative examination at government expense unless the record establishes that such an examination is necessary to enable the [ALJ] to make the disability decision." Landsaw v. Secretary of Health & Human Servs., 803 F.2d 211, 214 (6th Cir.1986). Every reasonable effort must be made to obtain the medical evidence necessary to make a disability determination from the claimant's medical sources before evaluating medical evidence obtained from another source on a consultative basis. See 20 C.F.R. §§ 404.1512(d)(1) and 416.912(d)(1). Thus, in his decision and order of February 26, 1990, the ALJ indicated that he had sought both a RFC assessment and a consultative examination from Dr. Lavoi, who had declined to do either, and that Dr. R.B. Gaston also did not respond to a request for an RFC assessment.
 
 
 30
 Nevertheless, the record was sufficiently fully developed to enable the ALJ to make a determination. Although, the "opinion of a treating physician is entitled to weight substantially greater than that of a doctor who has seen the claimant only once ... the determination of disability must be made on the basis of the entire record and not on only some of the evidence...." Hardaway v. Secretary of Health & Human Servs., 823 F.2d 922, 926 (6th Cir.1987) (per curiam). Thus, in the absence of any evidence from treating physicians, indeed it does not seem that claimant had any treating physicians except Dr. Bueno, who apparently did not treat claimant after the early 1980s when she stopped receiving treatment for her left arm,[2] the ALJ was required to rely on the reports of the consulting physician.
 
 
 31
 Furthermore, substantial evidence supports the ALJ's conclusion that the effects of claimant's anxiety and hypertension were considered when assessing her RFC and in finding that she could engage in substantial gainful activity. First, Dr. Patikas indicated that she had considered the effects of claimant's hypertension in assessing Peebles's RFC. Second, Dr. Cooke indicated that claimant's hypertension was well controlled at the time he examined her. Third, at the time of his examination, claimant told Dr. R.B. Gaston that she was having no difficulty with headaches or dizziness. R. 401. Thus, substantial evidence supports the ALJ's finding that claimant could perform a limited range of light work even considering her high blood pressure.
 
 
 32
 Furthermore, the ALJ addressed claimant's anxiety and found that she did not have a medically determinable impairment. Although claimant apparently takes a Librium when she becomes nervous or "tensed up," she has never seen a psychologist or psychiatrist and has no history of treatment for a mental disorder. Moreover, even though Dr. Davis listed anxiety/depression as one of his clinical impressions and stated that it "may" limit her job performance, R. 358, he did not recommend that claimant see a psychologist or psychiatrist or seek any other treatment.
 
 
 33
 No other physician remotely suggested that claimant has a mental impairment. Dr. Wagner found claimant fully alert and oriented, with normal speech and memory, R. 363, and Dr. Cooke flatly stated that he saw no evidence of any mental impairment. In addition, at the most recent hearing, claimant testified that her anxiety is controlled by her medication and that she experiences no side effects from such medication. R. 451-52. Thus, substantial evidence supports the ALJ's finding that claimant's anxiety is not a medically determinable impairment.
 
 B.
 
 34
 Claimant argues that the district court and the magistrate judge erred as to the definition of light work. According to claimant, to be able to meet the definition of light work, she would have to be able to occasionally lift and carry 20 pounds at a time. Claimant asserts, however, that because Dr. Davis limited her to lifting ten pounds at a time, the magistrate judge and district court erred in finding that substantial evidence supports the ALJ's finding that claimant could engage in substantial gainful activity.
 
 
 35
 First, as noted above, we review the Secretary's findings to see if they are supported by substantial evidence. At the January 23, 1990 hearing, the ALJ asked the VE to assume a hypothetical person of claimant's age, education, and lack of experience, with the residual functional capacity to perform a limited range of light work; namely, that she could not make significant use of her non-dominant hand in work activity. The VE then identified positions such a guard, door attendant, gate attendant, parking lot attendant, cashier at a self-service gas station, and machine tending jobs, and the VE testified that "[t]hese jobs would not involve lifting more than 10 pounds." R. 43.
 
 
 36
 Thus, we conclude that claimant's assertion is meritless. Here, the ALJ asked the VE to assume only a limited range of light work, not a full range of light work, and the VE identified jobs which did not involve lifting more than 10 pounds. Accordingly, the jobs identified by the VE are consistent with the limitations set forth by Drs. Davis, Cooke, and Patikas. Therefore, the ALJ's finding that claimant had the RFC to perform a limited range of light work, and that she had the RFC to perform a significant number of jobs in the economy is supported by substantial evidence.
 
 C.
 
 37
 Claimant argues that the magistrate judge and the district court failed to take note of the testimony of the VE, Thomely, on cross examination at the 1992 hearing. Claimant refers to certain hypotheticals posed by her attorney, and the VE's testimony in response. Essentially, claimant's attorney asked the VE if there were any jobs that claimant could perform if her testimony about the effects of her anxiety and hypertension were fully credited or credited to the extent that her anxiety and hypertension would require her to take at least six five-minute breaks during the working day, and the VE responded that there would be no jobs which the claimant could perform under those circumstances. A VE does not determine what restrictions a claimant had. Maziarz v. Secretary of Health and Human Servs., 837 F.2d 240, 247 (6th Cir.1987). "Rather, it [is] the ALJ's function to first determine what medical restriction a claimant was under and how they affected his residual functional capacity, and then to determine whether the [VE] had identified a significant number of jobs in a relevant market given these restrictions. Id. As was stated above, the ALJ's finding that claimant's anxiety and hypertension did not affect her ability to engage in a limited range of light work which did not require her to make significant use of her non-dominant left arm is supported by substantial evidence. Thus, the ALJ did not err in not relying on hypothetical questions posed to the VE which assumed restrictions on claimant's RFC which the ALJ rejected as unsupported by substantial evidence.
 
 D.
 
 38
 Finally, claimant argues that the ALJ erred because he considered the wrong Grids in determining that claimant could perform a significant number of jobs in the national economy. First, the ALJ relied on the testimony of a VE to determine that claimant could perform a significant number of jobs in the national economy and consulted the Grids only as a framework for his decision. As is noted above, this was altogether appropriate because the claimant alleged that she suffered from at least one non-exertional impairment; namely, anxiety.
 
 
 39
 Further, claimant's argument is based upon the incorrect assumption that because she is illiterate, the Grids might indicate that at her age, 51, she was disabled. However, claimant testified that she had completed her education through the tenth grade. The VE at the 1990 hearing, Sieveking, then asked for clarification as to her ability to read and write, and she testified that she could read a newspaper, although she was confused by big words. The regulations define illiteracy as " 'the inability to read or write,' " and state that a person is considered illiterate if they " 'cannot read or write a simple message such as instructions or inventory lists....' " Welchance v. Bowen, 731 F.Supp. 806, 813 (M.D.Tenn.1989) (quoting 20 C.F.R. § 416.964(b)(1)). The regulations also state that an illiterate individual generally " 'has had little or no formal schooling.' " Id. (quoting 20 C.F.R. § 416.964(b)(1)). The regulations further state that the next higher level of education, marginal education, " 'means ability in reasoning, arithmetic and language skills which are needed to perform simple, unskilled types of jobs,' " and that " 'formal schooling at a 6th grade level or less is a marginal education.' " Id. (quoting 20 C.F.R. § 416.964(b)(2)). The next highest subcategory of education is " 'limited education' " which generally refers to a " '7th grade through the 11th grade level of formal education.' " Id. (quoting 20 C.F.R. § 416.964(b)(3)).
 
 
 40
 Thus, claimant's argument is meritless. She did not argue below that she was illiterate. However, based upon her limited testimony on the subject it is clear that she would fall within one of the higher subcategories of education under the regulations; namely, either marginal education or limited education.
 
 III.
 
 41
 For the reasons stated, district court's grant of summary judgment is AFFIRMED.
 
 
 
 *
 Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 The medical evidence is aptly summarized in the numerous orders issued by the various administrative law judges which were involved at the various stages of this case as well as in the magistrate judge's reports and recommendations; thus, we have not summarized it here. Rather, we will refer to the evidence as necessary in our discussion of the issues raised by claimant on appeal
 
 
 [2]
 Dr. Lavoi treated claimant for at least two days while she was in the hospital; however, on this basis he can hardly be considered a treating physician. Further, there is little or no evidence that any physician, except for Dr. Lavoi, who submitted a report concerning claimant's anxiety or hypertension, ever saw or treated claimant more than once