Carla F. STEVENS, Plaintiff,

v.

Michael J. ASTRUE, Commissioner of Social Security Administration, Defendant.

Case No. 3:10–cv–371.

United States District Court, S.D. Ohio, Western Division, at Dayton.

Jan. 23, 2012.

Carla Felicia Stevens, Dayton, OH, pro se.

Henry S. Kramzyk, Patrick Edsenga, Social Security Administration, Chicago, IL, John J. Stark, U.S. Attorney Office, Columbus, OH, for Defendant.

**DECISION AND ENTRY: (1) ADOPTING THE REPORT AND RECOMMENDATIONS OF THE UNITED STATES MAGISTRATE JUDGE (Doc. 19); (2) OVERRULING PLAINTIFF'S OBJECTIONS (Doc. 20); AND (3) TERMINATING THIS CASE FROM THE DOCKET**

1. Attached hereto is NOTICE to the parties regarding objections to this Report and Rec-

TIMOTHY S. BLACK, District Judge.

This case is before the Court pursuant to the Order of General Reference in the United States District Court for the Southern District of Ohio Western Division to United States Magistrate Judge Michael J. Newman. Pursuant to such reference, the Magistrate Judge reviewed the pleadings filed with this Court, and, on December 1, 2011, submitted a Report and Recommendations. (Doc. 19). Subsequently, Plaintiff filed Objections to the Report and Recommendations (Doc. 20) and the Defendant responded (Doc. 21).

As required by 28 U.S.C. § 636(b) and Fed.R.Civ.P. 72(b), the Court has reviewed the comprehensive findings of the Magistrate Judge and considered *de novo* all of the filings in this matter. Upon consideration of the foregoing, the Court does determine that such Report and Recommendations should be and is hereby adopted in its entirety; and Plaintiffs objections to the Report and Recommendations are overruled.

Accordingly:

1. The Report and Recommendations (Doc. 19) is **ADOPTED;**
2. Plaintiff's Objections are (Doc. 20) are **OVERRULED;**
3. The Commissioner's decision that Plaintiff is not disabled and therefore not entitled to benefits under this Act is **AFFIRMED;** and
4. This case is **TERMINATED** on the docket of this Court.

**IT IS SO ORDERED.**

**REPORT AND RECOMMENDATION** [1]

MICHAEL J. NEWMAN, United States Magistrate Judge.

This is a Social Security disability benefits appeal brought pursuant to 42 U.S.C.

ommendation.

§ 405(g). Plaintiff Carla F. Stevens ("Plaintiff"), brings this case *pro se* challenging the Administrative Law Judge's ("ALJ") determination that she is not "disabled," and therefore not entitled to Supplemental Security Income (SSI) or Disability Insurance Benefits (DIB).

This case is before the Court upon Plaintiff's Complaint (Doc. # 2), Plaintiff's Response to the Order to Show Cause/Plaintiff's Statement of Errors (Doc. # 10), the Commissioner's Memorandum in Opposition (Doc. # 14), the administrative record (Doc. # 7), and the record as a whole.

## I. BACKGROUND

### A. Procedural History

Plaintiff filed applications for SSI and DIB on October 25, 2006, claiming that she has been under a "disability" since December 1, 2001. PAGEID 132–37. At the time of her initial applications, Plaintiff claimed to be disabled because of lower back strain and bilateral carpal tunnel syndrome ("CTS"). PAGEID 197. In a supplemental disability report, Plaintiff additionally claimed that she began suffering from depression on July 25, 2007. PAGEID 224.

Following initial administrative denials of her applications, Plaintiff was granted a hearing before ALJ Peter Silvain, where she was unrepresented by counsel. PAGEID 35–44. The ALJ heard testimony from Plaintiff and Charlotta Ewers, a vocational expert. PAGEID 51–93. The ALJ issued an unfavorable decision on April 8, 2010. PAGEID 35–44.

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2001.

2. The claimant has not engaged in substantial gainful activity since December 1, 2001, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: Chronic right sacroiliac joint strain/sprain; Bilateral carpal tunnel syndrome, and; Depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) subject to the following limitations: lift up to 20 pounds occasionally; lift/carry up to 10 pounds frequently; standing or walking for approximately 6 hours and/or sitting for up to 6 hours in an 8 hour work day with normal breaks; allow the worker to alternate sitting or standing positions at one hour intervals throughout the day; no more than frequent foot control operation; no climbing of ladders, ropes or scaffolds; occasional climbing ramps or stairs, stooping, kneeling, crouching or crawling; frequent gross manipulation; frequent fine manipulation of objects

no smaller than the size of a paper clip; avoid more than occasional exposure to hazardous machinery and unprotected heights; driving and operation of motor vehicles limited to frequent; work limited to simple, routine, and repetitive tasks; work in an environment free of fast paced production requirements; work involving only simple, work-related decisions; work with few, if any, work place changes; and only occasional interaction with the public and coworkers.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 28,-1962 and was 39 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 1, 2001, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

PAGEID 35–44.

The Appeals Council thereafter denied Plaintiff's request for review, PAGEID 28–30, making the decision of the ALJ the final administrative decision of the Commissioner. Plaintiff's concise Statement of Errors alleges that remand is warranted due to the existence of additional evidence not considered by the ALJ at the time he rendered his decision. PAGEID 534. Because Plaintiff is *pro se*, the Court liberally construes her Statement of Errors to also challenge the ALJ's decision on the ground that it is unsupported by substantial evidence.

### B. Plaintiff's Vocational Profile and Testimony

On the date of her alleged disability onset, Plaintiff's age placed her in the category of a "younger person" for purposes of resolving her DIB and SSI applications. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).[2] Plaintiff completed the twelfth grade and attended two years of college. PAGEID 79, 201. Her previous employment involved working as a residential advisor and data entry clerk. PAGEID 82, 197–98, 276.

At both hearings, the ALJ reviewed with Plaintiff her right to be represented by counsel. PAGEID 53, 65. Plaintiff articulated her understanding of that right, and waived it both orally and in writing. *Id.*; PAGEID 145, 164.

Although Plaintiff denied having an addiction to alcohol or any present addiction to drugs, Plaintiff's struggle with alcohol is well-documented throughout the record,

---

**2.** The remaining citations will identify the pertinent DIB Regulations with full knowledge of the corresponding SSI Regulations.

and her usage of drugs since her alleged onset date of disability includes marijuana, cocaine, and heroin. *See* PAGEID 85–86.

Plaintiff testified that she stopped working in 2001 due to back pain. PAGEID 82–83. She alleges that she is unable to return to work due to pain in her hands and back. PAGEID 85. Plaintiff described her back pain as dull and constant, which she believes to be caused by "a pinched nerve . . . in the lower back." PAGEID 73. Her pain sometimes radiates to her legs, but the medication she has been prescribed temporarily relieves her pain. PAGEID 74. Plaintiff described her CTS as akin to having "arthritis in both hands." PAGEID 75. She testified that her hands occasionally swell and lock up. *Id.*

As to her activities of daily living, Plaintiff testified that she is able to shower, cook, and make her bed; she gets assistance with laundry, dishes, housework, and shopping. PAGEID 76–77. Plaintiff further testified that she walked approximately six blocks to get to the hearing. PAGEID 69–70. She generally spends her days meditating and reading. PAGEID 70, 79. She smokes one-half pack of cigarettes per day. PAGEID 71. At the time of the hearing, she was not receiving any regular medical treatment, but was taking Naproxen, Lexapro, Aleve and Tylenol. *Id.;* PAGEID 73.

## C. Plaintiff's Medical Records

While Plaintiff alleges her onset date of disability as December 1, 2001, the administrative record contains only one treatment record prior to 2006.[3] Plaintiff's medical records from 2006 through the date of the ALJ's decision generally document treatment for her back pain and for her mental health.

### 1. Plaintiff's Back Pain [4]

The earliest record regarding Plaintiff's back pain is November 10, 2006. PAGEID 256–64. Plaintiff visited the emergency room and reported that she had "been taking other people's pain meds [for] 7 years" and that "she wants her own." PAGEID 264. Plaintiff was diagnosed as having chronic back pain, given pain medication, and discharged without the hospital taking x-rays or an MRI. PAGEID 256–64. Although Plaintiff was instructed by the attending physician to contact the Cassano Clinic for follow-up care within three days following her emergency room visit, the record is devoid of any evidence of treatment by that facility. *See* PAGEID 258.

On February 28, 2007, Plaintiff went to the emergency room, stating that she hurt her back in 1990 and was out of pain medication. PAGEID 505, 507. On the pain scale of one to ten, Plaintiff told the attending physician that her pain was at a three or four. PAGEID 514. Examination of Plaintiff's back showed diffuse non-localized tenderness over the lumbar back without localization or obvious deformity. PAGEID 508. During the examination, Plaintiff was found to be able to move easily, including sitting from a reclining position without issue. *Id.* The physician found no evidence to suggest any acute process that would require further evaluation, so Plaintiff was given two Vicodin and discharged. *Id.*

---

3. Plaintiff sought treatment for a cracked wisdom tooth on August 10, 2000. PAGEID 251–55.

4. While Plaintiff's emergency room records from 2006, 2007, and 2009 often reference her CTS, the administrative record contains no evidence that Plaintiff ever sought treatment or pain relief because of CTS. Plaintiff reported that she was diagnosed with CTS in 1999 and was given a brace for the condition at the time of diagnosis. PAGEID 290. Otherwise, beyond mere references to her CTS, the record reflects that whenever Plaintiff sought medical treatment for any physical ailment, it was for her back pain.

The record contains no documentation of Plaintiff receiving any medical treatment for her back pain between March 1, 2007 and February 6, 2009.

On February 7, 2009, Plaintiff went to the emergency room with complaints of back pain. PAGEID 457–73. Plaintiff was given Naprosyn for her pain and discharged. *Id.* On March 24, 2009, Plaintiff went back to the emergency room with complaints of back pain; she was given Vicodin and released. PAGEID 475–86.

Plaintiff was seen again at the emergency room on August 31, 2009, with complaints of back pain due to "lifting something too heavy" two days prior. PAGEID 491–503. Her toxicology report came back positive for cocaine. PAGEID 497. She was diagnosed with cocaine abuse and thoracic muscle strain on the left. *Id.* She was prescribed Vicodin and Flexeril before being discharged. *Id.*

When Plaintiff was seen for her initial visit with the Med–Surg clinic at Miami Valley Hospital, on May 15, 2009, her back pain was noted to be "well controlled." PAGEID 488.

### 2. Plaintiff's Mental Health

The earliest record regarding treatment of Plaintiff's mental health is November 21, 2006. PAGEID 267–82. Plaintiff was referred to Samaritan Behavioral Health following an arrest for disorderly conduct. PAGEID 267. Plaintiff was diagnosed as having alcohol dependence, opioid dependence, cocaine dependence, and posttraumatic stress disorder ("PTSD"). *Id.* She was assigned a GAF of 55.[5] *Id.* Plaintiff reported that she was diagnosed with bi-polar disorder three years prior, but could not recall the name of the physician who made the diagnosis or the treatment facility where the diagnosis was made. PAGEID 274.

When assessed by Eastway Behavioral Health in May 2007, Plaintiff was diagnosed with psychotic disorder NOS (not otherwise specified), bi-polar disorder NOS, alcohol dependence, opioid dependence, and cocaine dependence. PAGEID 344. She was assigned a GAF of 34.[6] *Id.* Following the initial visit, Plaintiff subsequently missed five appointments scheduled between May and September 2007, thereby causing Eastway to close their file. PAGEID 336–41.

Plaintiff returned to Eastway in July 2008 and was referred to the Council for Alcohol & Drug Abuse Services ("CADAS") for AoD (alcohol and other drugs) treatment, but she did not attend. PAGEID 380.

In December 2008, Plaintiff was once again seen at Eastway, where she was diagnosed with major depressive disorder and alcohol dependence. PAGEID 380–81. She was assigned a GAF of 55. *Id.* Community Psychiatric Support Treatment ("CPST") was recommended due to Plaintiff's mental health treatment history, and

---

**5.** "GAF," Global Assessment of Functioning, is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Commissioner,* 61 Fed.Appx. 191, 194 n. 2 (6th Cir.2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision ("DSM–IV–TR") at 32–34. A GAF score of 55–60 refers to "moderate symptoms ... or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers)." DSM–IV–TR at 34.

**6.** A GAF of 34 indicates "some impairment in reality testing, or impairment in speech and communication, or serious impairment in several of the following: occupational or school functioning, interpersonal relationships, judgment, thinking, or mood." DSM–IV–TR at 32–34.

Integrated Dual Diagnosis Treatment ("IDDT") and outpatient treatment were recommended due to Plaintiff's continued use of drugs and alcohol. PAGEID 381.

Plaintiff started regular treatment at Eastway in January 2009, and continued through July 2009. PAGEID 386–421. In January 2009, Plaintiff was diagnosed with major depressive disorder, alcohol dependence, along with a differential diagnosis of PTSD. PAGEID 412.

In addition to documenting her struggle controlling her use of alcohol, Plaintiff's treatment records from Eastway generally reveal a positive response to medication for depression. For instance, in March 2009, Plaintiff reported that her depression was improving. PAGEID 401. On May 15, 2009, Plaintiff was seen at the Med–Surg clinic at Miami Valley Hospital where her depression was noted to be "well controlled by Lexapro." PAGEID 489. In June 2009, Plaintiff reported that she felt "less depressed" and that the "current meds are helping [h]er anxiousness and depression." PAGEID 388–89. On July 31, 2009, Plaintiff reported that she was "doing good," and that she obtained Lexapro, Naltrexone and Trazodone from the Reach Out clinic. PAGEID 386. Plaintiff further reported that she was eating and sleeping well. *Id.*

### D. Reviewing and Consultative Physicians

On February 17, 2007, Diane Manos, M.D. ("Dr. Manos") provided a "Case Analysis" on behalf of the state agency in reviewing Plaintiff's claim of disability due to back pain and CTS. PAGEID 283. Based upon her review of Plaintiff's No-

vember 2006 emergency room treatment records, Dr. Manos noted that Plaintiff had full, painless range-of-motion in her back. *Id.* Regarding Plaintiff's CTS, Dr. Manos noted that Plaintiff's right wrist was positive for Phalen's, but negative for Tinel's.[7] *Id.* Dr. Manos ultimately opined that Plaintiff's back pain and CTS were "not severe." *Id.*

Joan Williams, Ph.D. ("Dr. Williams") was retained by the state agency to conduct a psychiatric review of Plaintiff in June 2007. PAGEID 294–308. However, Plaintiff failed to show up for either of the scheduled appointments. PAGEID 294, 307. Dr. Williams noted that the record contained no data regarding depression, anger problems, and bi-polar disorder during the DIB period of December 1, 2001 to December 31, 2001. PAGEID 307; *see also* PAGEID 35. Regarding the SSI claim, Dr. Williams found "insufficient evidence to determine the severity of [Plaintiff's] alleged mental conditions due to her failure to attend two scheduled psychological evaluations." PAGEID 307.

Following the first hearing before the ALJ, a consulting physician, Aivars Vitols, D.O. ("Dr. Vitols"), examined Plaintiff on behalf of the state agency on September 14, 2009. PAGEID 423–36. Plaintiff reported having constant low back pain. PAGEID 423. Examination revealed that Plaintiff suffered from painful, restricted motion in her lower back and her sacroiliac joint was tender to palpation. PAGEID 425. Plaintiff performed heel and toe touching satisfactorily. *Id.* Plaintiff was able to grasp and manipulate with both hands; her pinch and grip were intact and

---

**7.** Tinel's Sign is "a tingling sensation ["pins and needles"] in the distal end of a limb when percussion is made over the site of a divided nerve. It indicates a partial lesion or the beginning regeneration of the nerve." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1703 (30th ed.2003). Phalen's Maneuver involves reducing the size of the carpal tunnel by holding the hand straight, with the wrist fully flexed or extended, for 30 to 60 seconds. *Id.* at 1094, 1414.

equal; and she had no atrophy in either hand. *Id.*

Dr. Vitols diagnosed Plaintiff with chronic right SI joint sprain and strain and CTS. *Id.* Dr. Vitols accounted for a number of Plaintiff's functional limitations in his report, PAGEID 431–36, but noted that Plaintiff is nevertheless able to do many common activities such as shop at a store, travel without a companion, utilize public transportation, walk on uneven surfaces, climb a few steps at a reasonable pace, prepare simple meals, feed herself, groom herself, and sort or handle paper/files. PAGEID 436.

## II. APPLICABLE LAW

### A. Substantial Evidence Standard

██ The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence and if the correct legal criteria were employed by the ALJ. 42 U.S.C. § 405(g); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745–46 (6th Cir.2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir.1984). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. *Id.* As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir.1994).

### B. Establishing the Existence of a Disability

To qualify for DIB, Plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(*l*), 423. Establishment of a disability is contingent upon two findings: (1) Plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months; and (2) the impairments must render Plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of non-disability is made and the inquiry ends. *Id.* Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of non-disability is made and the inquiry ends. *Id.* Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). If Plaintiff suffers from an impairment which meets or equals one set forth in the Listings, the Commissioner is to render a finding of disability without consideration of plaintiff's age, education, and work experience. 20 C.F.R. § 404.1520(d); *Kirk v. Sec'y of H.H.S.*, 667 F.2d 524, 528 (6th Cir.1981). Fourth, if the individual's impairments do not meet or equal those in the Listings, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. *Id.* If the individual is unable to perform his or her past relevant work, then a *prima facie* case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Kirk,* 667 F.2d at 529.

■ A claimant has the burden of establishing disability by a preponderance of the evidence. *Born v. Sec'y of H.H.S.*, 923 F.2d 1168, 1173 (6th Cir.1990). Once a claimant establishes a *prima facie* case by showing an inability to perform his or her past relevant work, the burden shifts to the Commissioner to show that Plaintiff can perform other substantial gainful employment, and that such employment exists in the national economy. *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir.1999). To rebut a *prima facie* case, the Commissioner must come forward with particularized proof of the claimant's individual capacity to perform alternate work considering the claimant's age, education, and background, as well as the job requirements. *O'Banner v. Sec'y of H.E.W.,* 587 F.2d 321, 323 (6th Cir.1978).

## III. OPINION AND ANALYSIS

Liberally construed, Plaintiff's Statement of Errors challenges the ALJ's finding of non-disability on the grounds that 1) it is unsupported by substantial evidence, and 2) remand is warranted because additional evidence submitted to the Appeals Council (and unavailable to the ALJ) would produce a finding of disability if it had been considered. For the reasons that follow, the Court finds that the Plaintiff's challenges to the ALJ's finding of non-disability are without merit, and that Plaintiff's additional evidence would have had no impact on the ALJ's finding had it been considered.

### A. Substantial Evidence Supports the ALJ's Finding that Plaintiff is Capable of Performing a Limited Range of Light Work, and is Therefore Not "Disabled."

■ The Court has carefully reviewed the ALJ's decision to determine whether the ALJ's critical findings of fact were made in compliance with the applicable law and whether substantial evidence in the record supports those findings. Based upon its review, the Court finds that the decision of the ALJ is supported by sub-

stantial evidence, and recommends that the ALJ's decision be affirmed.

Under the Regulations, "some issues are not medical issues regarding the nature and severity of an individual's impairments but are administrative findings that are dispositive of a case; *i.e.*, that would direct the determination or decision of disability." Social Security Ruling (SSR) 96–5p, 61 Fed.Reg. 34471, 34474 (1996). One such issue is the residual functional capacity ("RFC") finding. RFC is an adjudicator's administrative assessment of "what an individual can still do despite his or her limitations." SSR 96–8p, 61 Fed.Reg. 34474, 34475 (1996); 20 C.F.R. § 404.1520.

The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 404.1527(e). Thus, the final responsibility for deciding a claimant's RFC is reserved to the Commissioner. 20 C.F.R. § 404.1549(e)(2). Based on substantial evidence in the record, the ALJ found that Plaintiff retained the RFC to perform a limited range of light work, stating:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) subject to the following limitations: lift up to 20 pounds occasionally; lift/carry up to 10 pounds frequently; standing or walking for approximately 6 hours and/or sitting for up to 6 hours in an 8 hour work day with normal breaks; allow the worker to alternate sitting or standing positions at one hour intervals throughout the day; no more than frequent foot control operation; no climbing of ladders, ropes or scaffolds; occasional climbing ramps or stairs, stooping, kneeling, crouching or crawling; frequent gross manipulation; frequent fine manipulation of objects no

smaller than the size of a paper clip; avoid more than occasional exposure to hazardous machinery and unprotected heights; driving and operation of motor vehicles limited to frequent; work limited to simple, routine, and repetitive tasks; work in an environment free of fast paced production requirements; work involving only simple, work-related decisions; work with few, if any, work place changes; and only occasional interaction with the public and coworkers.

PAGEID 40.

Furthermore, the ALJ found that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms lacked credibility to the extent that they are inconsistent with her RFC. *See* PAGEID 41–43.

Using Medical–Vocational ("Grid") Rule 202.20, as a framework for decision-making, and relying on the testimony of the vocational expert, the ALJ determined that Plaintiff is incapable of performing her past relevant work. PAGEID 43–44. The ALJ further determined, on the other hand, that Plaintiff is capable of performing a significant number of jobs in the national economy such as warehouse checker, mail clerk, copy machine operator, officer helper, and order caller. PAGEID 44. Consequently, the ALJ concluded that Plaintiff is not "disabled" under the Act, and is therefore not entitled to disability benefits. *Id.*

### 1. The ALJ's RFC Finding is Consistent with the Opinion Evidence of Record.

█ Plaintiff bore the responsibility of not merely producing a diagnosis of an impairment, but of demonstrating correlative functional limitation. See 20 C.F.R.

§ 404.1512(a); *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir.1988); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). In the case at bar, the record fails to corroborate the severity of Plaintiff's alleged limitations and, in fact, shows that her symptoms responded to treatment.

■ The Court finds no apparent error in the ALJ's evaluation of the medical evidence. The medical evidence Plaintiff submitted took the form of treatment notes, forms and similar records rather than actual opinions of her treating physicians regarding her condition. *See* PAGEID 251–82, 287–91, 309–525. The record contains no opinion by any of Plaintiff's treating physicians indicating that she suffers from any ailment that precludes her from conducting light work as accommodated by the limitations imposed by the consultative physician and adopted by the ALJ. Due to the absence of any treating physician opinion stating otherwise, the ALJ was justified in relying heavily upon the consultative examination performed by Dr. Vitols. PAGEID 423–36; *see, e.g., Peebles v. Chater*, 1996 WL 229528, at *5, 1996 U.S.App. LEXIS 42593, at *15 (6th Cir. May 6, 1996)(finding that "in the absence of any evidence from treating physicians . . . the ALJ was required to rely on the reports of the consulting physician.").

### 2. The ALJ's Credibility Determination is Entitled to Deference.

■ In his decision, the ALJ weighed Plaintiff's credibility and found that her allegations—regarding the degree of severity of her limitations and impairments—were not credible. PAGEID 41–43. Although Plaintiff does not specifically challenge the ALJ's credibility finding, it is important to note that the ALJ's finding was proper as he reasonably considered Plaintiff's credibility in assessing her RFC.

The ALJ's RFC finding was also supported by his careful consideration of Plaintiff's subjective symptoms. While the ALJ found that Plaintiff had severe chronic right sacroiliac joint strain/sprain, CTS, and depression, the mere presence of an underlying medical condition satisfies only one prong of the Sixth Circuit standard for evaluating subjective complaints. *See* PAGEID 37; *see also Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir.1986).

■ To prove that her subjective complaints are disabling, Plaintiff must present objective medical evidence confirming the severity of the alleged symptoms or show that the medical condition is of such severity that it could reasonably be expected to produce disabling symptoms. *Id.* Here, not only did Plaintiff fail to submit objective evidence showing that her symptoms were of disabling severity, the record contains objective evidence showing otherwise. For example, on multiple occasions Plaintiff went to the emergency room with complaints of back pain, but was given pain medication and discharged without the need for further testing, x-rays or MRIs. *See, e.g.,* PAGEID 457–73, 475–86, 491–503, 505–15. Moreover, there are significant gaps in the treatment records. Plaintiff alleges a disability onset date of December 1, 2001, but there are no treatment records relating to her back pain prior to November 2006—a period of nearly five years. Similarly, there are no records showing that Plaintiff received any treatment for back pain between March 1, 2007 and February 6, 2009—close to a two-year period.

Regarding Plaintiff's mental health, the record shows that she was referred to mental health treatment at Samaritan Behavioral Health in November 2006 because she was arrested for disorderly conduct, not because she sought out treatment or

because she was continuing treatment from some other provider. PAGEID 267–82. In addition, significant gaps in Plaintiff's mental health treatment records exist due to Plaintiff's refusal and/or failure to appear for scheduled appointments. Moreover, there is no evidence in the record that suggests that Plaintiff failed to appear for her mental health appointments on account of a mental health condition or impairment. The most consistent records are from Plaintiff's regular attendance at Eastway from March 2009 through June 2009. If anything, those records reflect that Plaintiff's mental health was generally improving, and that her depression was well-controlled by medication. *See* PAGEID 386, 388–89, 401, 489.

The ALJ's findings regarding Plaintiff's credibility, functional limitations, and determination that Plaintiff is not disabled are all supported by substantial evidence. Furthermore, the Court finds that substantial evidence supports the ALJ's RFC finding, as it reasonably and adequately accommodates Plaintiff's credible symptoms.

### B. Plaintiff's Additional Evidence Does Not Warrant Remand.

Plaintiff submitted additional evidence in this case, specifically, treatment notes from the Samaritan Homeless Clinic dated December 9, 2010 and February 4, 2011 (Doc. # 10, Attachment 1 & 2), and emergency room records from Grandview Hospital dated from October 29, 2010 through January 16, 2011. (*Id.*, Attachments 3–8). Where, as in Plaintiff's case, the Appeals Council denied review of the ALJ's decision, that decision constitutes the final decision of the Commissioner subject to review. Plaintiff's additional evidence was not, therefore, part of the record on which the Commissioner's final decision was based, and, consequently, it is not considered to be part of the administrative record for the purpose of judicial review. *See*

*Casey v. Secretary of Health & Human Services,* 987 F.2d 1230, 1233 (6th Cir. 1993).

The Sixth Circuit has repeatedly held that evidence submitted in the first instance to the District Court may only be considered in determining whether remand is appropriate pursuant to Sentence Six of § 405(g). *Id.* A Sentence Six remand is warranted only "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.* (quoting 42 U.S.C. § 405(g)).

■ However, the additional evidence submitted by Plaintiff is neither new nor material. As the Commissioner correctly argues, the additional evidence is cumulative of evidence already in the record—evidence which shows that Plaintiff continued to complain of back pain and receive conservative treatment. Even if the ALJ had reviewed this evidence, there is no reasonable probability that a different disposition would have occurred here, or that the ALJ would have viewed the evidence before him differently. The additional evidence is, therefore, not material as a matter of law and does not warrant remand under Sentence Six. *See Foster v. Halter,* 279 F.3d 348, 358 (6th Cir.2001) (newly submitted evidence found to be not material where plaintiff "has not established that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with this evidence.").

### IV. RECOMMENDATION

For the foregoing reasons, the Court finds Plaintiff's assignments of error without merit. **IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability determination be **AFFIRMED;** and December 1, 2011.

2. The case be **TERMINATED** on the docket of this Court.